EBENEZER FREEMAN *versus* JOHN KENNEY *et al.*

The recent perambulation of a line between two adjoining towns, by the selectmen,
when duly recorded, affords strong, but not conclusive evidence, that it is the true
boundary line.

Where a poll tax is assessed upon a person in a town of which he is not an inhabi-
tant, and is collected by distress, the assessors are responsible for such assessment,
the *St.* 1823, *c.* 138, § 5, exempting them from responsibility not being applica-
ble in such case ; and it is not a defence, that the residence of the person taxed
was included within the boundaries of such town as perambulated.

*Trespass*, and not *case*, is the proper remedy against such assessors.

THIS was an action on the *case* against the defendants as
assessors of the town of Truro, for illegally assessing and
causing to be collected by distress, a tax on the poll and a
portion of the real estate of the plaintiff, in 1830, the plaintiff
alleging, that his residence and the real estate taxed, were in
the town of Wellfleet.

The defendants pleaded the general issue, and filed a brief
statement, in which they justified as assessors of Truro, and
alleged the plaintiff's residence and the real estate which was
taxed, to be in that town. Issue was joined on this plea.

The parties stated the case.

At the trial, before *Wilde* J., it appeared or was admitted,
that the defendants acted honestly in the assessment and col-
lection of the tax ; that for a long period of years prior to
1830, the plaintiff's residence and the estate taxed fell within
the limits of Wellfleet, according to certain ancient monu-
ments, and by the boundary lines between Truro and Well-
fleet, as run and marked by the selectmen of those two towns ,
that he had never been taxed in Truro for his poll or for this
estate, previously to 1830, but had always been taxed there-
for in Wellfleet ; that in 1829, the selectmen of Truro and
Wellfleet perambulated and marked out the boundary line

between these towns ; that by this line, which was duly cer- <span style="float:right">Freeman</span>
tified by such selectmen and recorded in the town records of <span style="float:right">*v.*<br>Kenney.</span>
both towns, the plaintiff's residence and this estate fell within
the limits of Truro ; and that this line remained unaltered in
1830, when the tax in question was assessed.

The jury were instructed, that if, at the time when this
tax was assessed, the plaintiff's residence and the estate taxed
were in Wellfleet, their verdict should be for the plaintiff;
otherwise it should be for the defendants.   The questions of
law were reserved for the whole Court.

The jury returned a verdict for the plaintiff.

It was objected on the part of the defendants :

1. That they, as assessors, were not responsible on ac-
count of such assessment, they having been thereto required
by the constituted authorities of the town, and having acted
with integrity and fidelity ; and that the remedy of the plain-
tiff, if he had any, was against the town of Truro.

2. That if the defendants were responsible in any form,
they were not liable in an action on the *case*, but only in
*trespass*.

If, upon these facts, the Court should be of opinion, that
the defendants were not responsible, or that the action should
have been trespass, or if upon the whole evidence the plain-
tiff was not entitled to recover, the verdict was to be set
aside, and judgment entered for the defendants for costs ;
otherwise judgment was to be rendered upon the verdict.

*J.* and *T. Reed*, for the defendants, as to the first objection, <span style="float:right">*Oct. 22d.*</span>
cited *Ingraham* v. *Doggett*, 5 Pick. 451 ; *Libbey* v. *Burn-
ham*, 15 Mass. R. 144 ; *Thayer* v. *Stearns*, 1 Pick. 482 ;
*Gridley* v. *Clark*, 2 Pick. 403 ; *St.* 1823, *c.* 138, § 5 ;
*Withington* v. *Eveleth*, 7 Pick. 106 ; *St.* 1785, *c.* 75, § 1 ;
*St.* 1785, *c.* 50, § 1 ; as to the second objection, *Agry* v.
*Young*, 11 Mass. R. 220.

*Warren* and *Marston*, for the plaintiff, cited as to the first
objection, *Gage* v. *Currier*, 4 Pick. 399 ; *Inglee* v. *Bosworth*,
5 Pick. 498.

Morton J. delivered the opinion of the Court.   The <span style="float:right">*Oct. 23d.*</span>
jury have determined that the plaintiff's residence and estate
were in Wellfleet.   And although the recent perambulation of

Freeman
v.
Kenney.

the line between the towns of Wellfleet and Truro had thrown the plaintiff's home and estate in the latter town, yet this was only *primâ facie* evidence of the line, and, we are satisfied, was shown to be incorrect by more potent evidence.

By *St.* 1785, *c.* 75, § 1, it is enacted, "that the bounds of all townships shall be, and remain as heretofore granted, settled and established." It is also provided, that the lines between towns shall be run and the marks renewed within three years, "and once every five years for ever after, by two or more of the selectmen of each town," "and their proceedings, after every such renewal of boundaries, shall be recorded in their respective town books." Selectmen clearly have no power to alter the limits of towns. This can only be done by the legislature of the commonwealth. Nor are they the ultimate judges of the territorial limits of towns. Their duty is a ministerial rather than a judicial one. It is to resurvey an *old* line and not to establish a *new* one. It is to *renew* monuments as they have existed, and not to *alter* their location. They are liable to fall into errors and mistakes in their perambulations, and if these are to be deemed conclusive evidence, the boundaries of towns may be changed, and the rights of individuals, as well as corporations, affected by an accidental blunder or unintentional mistake of selectmen.

When perambulations are duly made and recorded, they are not merely *primâ facie*, but *very high* and *strong* evidence. They may however be overbalanced by *higher* and *stronger* evidence, and, in the present case, we think they were so. The ancient monuments and immemorial usage and acquiescence of the adjoining towns, were properly judged by the jury to be of more weight than the recent perambulation of selectmen, who, preferring a straight to a crooked line, run it where they thought it probably ought to be, rather than where they believed it ever had been.

The defendants, in assessing the plaintiff, acted, as has been agreed by the parties, with fairness, fidelity, and integrity. But this will not protect them from this action. They cannot correctly be said to have been required by the town of which they were assessors, to assess a tax upon persons, who did not reside within, or own estate lying within, its territorial

umits, and so are not protected by the statute of 1823, c. 138, § 5. *Gage* v. *Currier*, 4 Pick. 399 ; *Inglee* v. *Bosworth*, 5 Pick. 498 ; *Ingraham* v. *Doggett*, 5 Pick. 451.

But the plaintiff has clearly misconceived his action. Trespass, and not case, is the proper remedy. The constable or collector acted by the command of the assessors contained in their warrant to him. The act itself was a direct and forcible injury to the plaintiff. And those who commanded it to be done are principals in it, as much as those who actually committed it. That trespass is the only proper form of action, was directly decided in 1814, in *Agry* v. *Young*, 11 Mass. R. 220. That decision has never been questioned, and the practice has been uniformly according to it ever since ; and indeed it was generally the same long before. *Colburn* v. *Ellis*, 5 Mass. R. 427. The plaintiff therefore cannot have judgment upon this writ and declaration.